UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Lucy Ann Londono

    v.                                  Civil No. 11-cv-153-JD
                                          Opinion No. 2012 DNH 127

Michael J. Astrue, Commissioner,
Social Security Administration


O R D E R

Lucy Ann Londono seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying her application for social security disability insurance benefits under Title II. Londono contends that the Administrative Law Judge ("ALJ") erred in his assessment of her impairments and their combined effects, in his evaluation of the medical opinion evidence, and in finding medical improvement. The Commissioner moves to affirm.


Background

The background information is taken from the parties' joint statement of material facts, augmented, as necessary, by the administrative record. See LR 9.1(b).

Lucy Ann Londono filed an application for disability insurance benefits on January 8, 2009, alleging a disability

since September 13, 2007, due to fibromyalgia, back pain, diabetes, anxiety, and depression.  She was thirty-nine years old when she filed her application.  Londono has an Associate Degree and training as a medical transcriptionist.  Her past jobs included working as a medical transcriptionist, retail sales attendant, production team leader for an electronics manufacturer, and customer service representative.

    A.   <u>Medical Records of Physical Impairments</u>

Before her application for benefits, Londono had been diagnosed with diabetes and received treatment for the disease.  Her medical records show that she was inconsistent in controlling her diabetes, which caused repeated episodes of diabetes symptoms, including high blood sugar levels and depression.  Her diabetes remained uncontrolled through much of the relevant period.

At an appointment with ARNP Tamara Tello on August 21, 2008, Londono reported that she had been in a car accident on July 28, 2008.  ARNP Tello noted lower back pain and strain along with prior chronic low back pain.  On examination, ARNP Tello found normal responses.  An x-ray of the lumbar spine showed no acute bony issue and only minimal left curvature of the spine.

On September 5, 2008, Londono's primary care physician, Dr. Maria Velazquez-Evans, noted Londono's back pain.  Londono began physical therapy on September 17.  She reported left-sided sacroiliac joint pain with radiating pain down her left thigh. By November 20, Londono had completed four physical therapy treatments and reported 60% to 70% improvement in her pain.

On April 16, 2009, Dr. Hugh Fairley, a state agency consultant, completed a residual functional capacity evaluation based on a review of Londono's records.  Dr. Fairley assessed the effects of Londono's sacroiliac joint disease, obesity, and fatigue.  He concluded that Londono had the residual functional capacity to do work at the light exertional level, that she could occasionally do certain postural activities, and that she should avoid extreme temperatures and other environmental conditions. Dr. Fairley noted that the record did not include a medical source statement of Londono's physical capacities.

On June 16, 2009, PA-C Anne Riemer assessed Londono with a lumbar muscle spasm and prescribed medication.  In July, PA-C Riemer found that Londono's back range of motion was limited and her straight leg raise was limited to forty-five degrees on the right.  On August 14, 2009, PA-C Riemer assessed Londono with "myalgia/polyarthralgia with a question of fibromyalgia." Londono reported ongoing musculoskeletal pain which was increased

by standing.  An x-ray of the lumbar spine showed mild left-sided degenerative changes of the sacroiliac joints.

On September 2, 2009, PA-C Riemer noted that Londono's depression was worse and that her fibromyalgia pain had increased.  She added that depression might be contributing to Londono's perception of pain.  She was referred to a rheumatologist.  Londono was discharged from physical therapy with a prognosis of fair after she missed scheduled visits and follow-up communication.  On September 28, 2009, Dr. Leslie M. Dionne noted that Londono's diabetes was under better control and that Londono reported that she was feeling much better.

Londono was diagnosed with breast cancer on September 16, 2009, following a biopsy.  The lesion was surgically removed.  An MRI in November showed no sign of malignancy and followup examinations have all been benign.

On December 11, 2009, Dr. Dionne wrote that Londono's diabetes was very poorly controlled but her fibromyalgia had improved.  In January of 2010, Londono reported that she was doing well, despite ongoing high blood sugars, that her fibromyalgia pain was well managed although she continued to have low back pain.  PA-C Ronald Carson ordered an MRI of Londono's lumbar spine because of ongoing pain.  The MRI was done in March of 2010 and showed "grade I anterolisthesis of L5 relative to S1

4

causing bilateral neuroforaminal encroachment."  Based on that result, PA-C Carson and Dr. Dionne decided that Londono should be referred to a neurosurgeon.  In March, Londono reported that her back pain was improved with medication but she was feeling down.

In July of 2010, an x-ray of the lumbar spine showed "grade 1 anterolisthesis, as well as L5 spondylosysis."  Dr. Dionne referred Londono to a physiatrist, Dr. Jonathan Mazur, for a work capacity evaluation.  Dr. Mazur completed a Medical Source Statement of Ability to Do Work (Physical) on August 5, 2010.  Dr. Mazur stated that Londono could lift and/or carry less than ten pounds, could stand and/or walk for less than two hours in an eight-hour workday, noting she could do so for only five minutes, could sit for an unlimited amount of time, and was severely limited in using her arms.  Dr. Mazur also found that Londono could never do most postural activities, that she could occasionally reach and handle or finger things, and that she was limited in exposure to environmental conditions.

   B.   Medical Records of Mental Impairments

Londono was treated at Community Council of Nashua from October 14, 2008, until July 7, 2010, receiving mental health therapy and medication management.  She began counseling with Kate Murphy who was supervised by Dr. Christopher Benton, a

psychiatrist.  Together, Murphy and Dr. Benton assessed a GAF score of 45 on September 10, 2008.[1]

On October 14, 2008, Londono was evaluated by Dr. Philip Santora, a psychiatrist, who diagnosed major depressive disorder and panic disorder with agoraphobia and assessed a GAF score of 50.  Dr. Santora wrote that Londono's anxiety was the first priority for treatment.  On examination, Dr. Santora found that Londono had a mildly depressed mood with mild psychomotor retardation, depressed and anxious affect, fair to good attention span, clear thinking processes, normal memory, no psychotic process, and fair to good insight, judgment and impulse control.

Dr. Santora added a diagnosis of post-traumatic stress disorder ("PTSD") in November of 2008 and also noted increased depression and anxiety although Londono's memory, attention, concentration, thought process, and associations were intact.  In his opinion, Londono's decision making was unstable, and Dr. Santora noted that without treatment Londono had a moderate risk of mortality.  On December 8, 2008, Dr. Santora noted that

---

[1]GAF is an abbreviation for Global Assessment of Functioning, and a score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

Londono's mood had improved although anxiety was still a problem and that she had a moderate level of mental illness.  On March 19, 2009, Dr. Santora noted that Londono's mood and affect were good and that other processes were intact.

On March 23, 2009, George Ruppel, Ph.D., saw Londono for a consultative examination.  Dr. Ruppel diagnosed depressive disorder and possible panic disorder.  On her mental status examination, Londono was oriented, at the low end of intelligence, had difficulty with memory tests, and seemed depressed and anxious.  In Dr. Ruppel's opinion, Londono would be able to attend to and complete simple tasks with effort and would have problems interacting with other people.

On April 6, 2009, Edward Martin, Ph.D., completed a mental residual functional capacity assessment based on medical records from Dr. Benton and Dr. Ruppel.  Dr. Martin found that Londono had no significant limitations in most categories and moderate limitations in her ability to understand, remember, and carry out detailed instructions; to interact appropriately with others; and to make realistic goals and independent plans.  Based on those findings, Dr. Martin concluded that Londono was able to remember and carry out short and simple instructions and to complete a normal work day and work week.

In August of 2009, Londono reported to Dr. Santora that her mood was better but her anxiety had increased.  Dr. Santora found that her mental processes were intact.  In July of 2010, Dr. Santora noted that Londono was depressed and anxious with decreased memory, concentration, and attention span.  Dr. Santora completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on July 7, 2010.  He found that because of her major depressive disorder and panic disorder with agoraphobia, Londono had marked limitations in her ability to understand and remember detailed instructions, to sustain concentration and persistence except for short and simple instructions and decisions, to interact appropriately with the public, to accept instructions and criticism, to travel and use public transportation, and to set realistic goals and make independent plans.

On July 23, 2010, Londono's counselor, Kate Murphy, also completed a Medical Source Statement of Ability to Do Work-Related Activities.  Murphy found that because of major depressive disorder and panic disorder with agoraphobia Londono had marked limitations in her ability to maintain attention and concentration through a work day, to maintain a schedule and attendance, to work in proximity to others without distraction, to complete a normal work day and week, to interact appropriately

with the public, and to respond appropriately to changes in the work setting.

### C. Administrative Proceedings and Decision

Londono described her daily activities in a Function Report dated January 28, 2009. She wrote that she had two good days per week when she could cook, shower, and clean the house. On bad days, she made coffee, took medication, and returned to bed. She needed reminders to clean the house and to get dressed. She said that she cleaned, did laundry, cooked, went out only for doctors' appointments, pays bills, and shopped twice per month at night when there were few people at the store. She also said that her impairments affected her memory, concentration, ability to understand instructions, and her ability to get along with others.

A hearing was held on August 20, 2010. Londono testified and was represented by counsel. A vocational expert also testified. Londono testified that she was unable to work because of anxiety, depression, fibromyalgia, and back pain. Her physical symptoms prevented her from standing or sitting for extended periods, and her psychological symptoms made her want to be alone and interfered with her memory and concentration. She said that she was scheduled for back surgery in September.

The vocational expert provided the Dictionary of Occupation Title descriptions of Londono's past work.  He testified that a person who could do work at a light exertional level with a restriction on doing postural activities only occasionally, and a need to avoid environmental extremes and respiratory irritants could do all of Londono's past work.  When the ALJ added a limitation that she could understand, recall, and carry out only short and simple instructions, the vocational expert responded that she could do her past work as a sales attendant and could also do other jobs as a fast food worker, office mail clerk, office helper, cashier, cafeteria attendant, and delicatessen clerk.  In the third hypothetical question, the ALJ described a person limited to sedentary work who could do no postural activities, was limited in her ability to push and pull, and could reach, handle, and finger only occasionally.  The vocational expert said that with those limitations there were no jobs available.  When the ALJ added marked limitations in the categories of understanding and memory, concentration and persistence, social interaction, and adaptation, the vocational expert testified that no jobs would be available.

The ALJ issued the decision on October 21, 2010, in which he found that Londono had severe impairments due to diabetes, obesity, lumbar strain, and depressive disorder.  The ALJ found

that from September 13, 2007, to October 13, 2008, Londono had the residual functional capacity to do light work that involved only short and simple instructions and did not require climbing ladders or exposure to environmental extremes. Based on that capacity, the ALJ found that Londono could not do her past work but could do the jobs that the vocational expert identified at the hearing.

For the period between October 14, 2008, to November 10, 2009, the ALJ found that Londono retained the same capacity for light work but had marked limitations in understanding and memory, concentration and persistence, social interaction, and adaptation. Because of those limitations, the ALJ found that Londono was disabled during that period. As of November 11, 2009, the ALJ found that Londono's mental health had improved so that she had returned to the residual functional capacity she had before October 14, 2008, and could do the same work as before the period of disability. When the Decision Review Board failed to complete review within the time allowed, the ALJ's decision became the final decision of the Commissioner.

## Standard of Review

"Judicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and

found facts upon the proper quantum of evidence." <u>Ward v. Comm'r of Social Security</u>, 211 F.3d 652, 655 (1st Cir. 2000) (citing <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999)).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence, even if other evidence would support a different conclusion.  § 405(g); <u>Tsarelka v. Sec'y of Health & Human Servs.</u>, 842 F.2d 529, 535 (1st Cir. 1988).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev.</u>, 620 F.3d 62, 66 (1st Cir. 2010).

<u>Discussion</u>

Londono challenges the ALJ's findings that she was not disabled, between September 13, 2007, and October 13, 2008, and that she medically improved and was not disabled after November 11, 2009.  She contends that the ALJ did not properly assess the severity of her mental and physical impairments and the combination of her impairments, did not properly evaluate the medical opinion evidence for purposes of assessing her residual functional capacity, erred in relying on the opinions of state agency consultants, and erred in finding that she had medically improved.  The Commissioner argues that the ALJ properly

considered Londono's impairments and the medical opinions and that he correctly found medical improvement.

A.  Closed Period of Disability

When an ALJ finds that the claimant was disabled for a closed period, as occurred in this case, he must follow a multi-step evaluation process to decide whether the disability continued to the date of the decision or terminated at earlier time. 20 C.F.R. § 404.1594(f); Tumminaro v. Astrue, 671 F.3d 629, 633 (7th Cir. 2011). The first two steps in the process are not at issue in this case.

At the third step, the ALJ must determine whether "there has been medical improvement," meaning "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision" of disability. § 404.1594(f)(3) & (b)(1). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." § 404.1594(b)(1). To make a finding of medical improvement, an ALJ must compare the medical severity of the claimant's impairments as they existed during disability and at the time of the decision. § 404.1594(b)(7).

If the ALJ finds medical improvement, he must then determine whether the improvement is related to the ability to work, § 404.1594(f)(4), by comparing the claimant's current functional capacity with her functional capacity when she was disabled, § 404.1594(b)(7).  When the ALJ finds medical improvement related to the ability to work, he next decides whether the claimant's impairments are severe, § 404.1594(f)(6); if so, he decides whether the claimant can return to her past work, § 404.1594(f)(7); and if not, the ALJ decides whether she can do other work, § 404.1594(f)(8).  The Commissioner bears the burden of showing that the claimant is no longer disabled due to medical improvement that is related to her ability to work so that she is able to do substantial gainful activity. § 404.1594(b)(5); Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994); McKenzie v. Astrue, 2011 WL 6025839, at *7 (E.D. Cal. Dec. 2, 2011); Jones v. Astrue, 2011 WL 2633793, at *3 (N.D. Tex. July 5, 2011); Lynch v. Astrue, 2011 WL 2516213, at *3 (W.D.N.Y. June 21, 2011).

In this case, the ALJ found that Londono had medically improved by November 11, 2009.  The ALJ's explanation for his finding of medical improvement consists of two statements: (1) that Londono "was noted to be doing well emotionally," citing "Exhibit 14F/215," and (2) that Londono "reported that her mood was better, that her anxiety was better, and that her sleep was

better," citing "Exhibit 11F/11."  The ALJ did not compare the severity of Londono's impairments during her period of disability with the severity when he found medical improvement.

Exhibit 14F/215 is part of a letter from Londono's oncologist, Dr. Rao, to Londono's other medical providers who had referred Londono to Dr. Rao for treatment of breast cancer.  The letter is dated November 20, 2009, and describes the nature of Londono's breast cancer and the surgical procedure used for removal.  Dr. Rao also notes that Londono had been treated for depression since 1999.  On the last page of the letter, Dr. Rao wrote: "She is emotionally holding up well and does not feel the need for a second opinion, support groups or counseling."  Taken in the correct context, Dr. Rao's remark means only that Londono was holding up well with respect to dealing with breast cancer.  The remark does not provide evidence of medical improvement with respect to her diagnoses of depression and anxiety.

Exhibit 11F/11 is a progress note by Kate Murphy who provided counseling to Londono.  The note indicates in the section for "Chief Complaint" that Londono was diagnosed with major depressive disorder and panic disorder, which is followed by a note:  "mood better, anx [sic] better, sleep better."  Londono continued medication for depression, and Murphy repeated the same diagnoses in her progress report in March of 2010.

Taken in context, Murphy's notation merely begs the question, better than what? Because the ALJ did not provide the comparison required by the regulations, that explanation is missing.

Although the ALJ discussed some medical evidence of improved symptoms to support his residual functional capacity assessment, he did not provide the comparison that is required by the regulations for purposes of finding medical improvement. In addition, the cited medical evidence, taken out of context, does show, persuasively, that medical improvement occurred. Further, the ALJ's residual functional capacity assessment is flawed by errors in weighing the medical opinion evidence. Therefore, the Commissioner has not carried his burden to show that Londono was no longer disabled beginning on November 11, 2009.

B.   September 13, 2007, to October 14, 2007

The ALJ found that Londono retained the functional capacity for light work, limited to jobs with short and simple instructions, until October 14, 2007. In making that determination, the ALJ relied on the opinions of state agency consultants, Dr. Fairley and Dr. Martin, that were provided in April of 2009. The ALJ gave the other opinion evidence, including opinions of Londono's treating sources, "little weight" stating only that those opinions "were rendered after October 13,

2008."  The same reasoning would apply to the consultants' opinions.  Therefore, the ALJ's explanation is insufficient.  <u>See</u> 20 C.F.R. § 404.1527.

Substantial evidence is lacking to support the ALJ's residual functional capacity assessment for the period between September 13, 2007, and October 14, 2007.

## Conclusion

For the foregoing reasons, Londono's motion to reverse and remand the Commissioner's decision (document no. 10) is granted. The Commissioner's motion to affirm (document no. 11) is denied. The case is remanded for further administrative proceedings.

The Clerk of Court shall enter judgment accordingly and close the case.

SO ORDERED.

                                                                      /s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

July 26, 2012

cc:  Collette C. Cushing, Esquire
     Robert J. Rabuck, Esquire
     Jeffry A. Schapira, Esquire